SOLOMON DOWNER *v.* ROYAL FLINT AND LYMAN ELLSWORTH.

### Costs. Pleading. Estoppel.

Separate travel and attendance fees before a justice, and travel and term fees in the county court, may be taxed by two or more defendants in an action of tort, unless by joining in a plea in bar they so identify their interests as to make the success of each dependent upon that of the other.

The general issue in actions of tort, though, in form, joint, is regarded as a several plea.

A disclaimer as to the ownership of property, the title of which was really in the plaintiff, which induced the defendant to sell it, when he would not have done so but for the disclaimer, *held* to estop the plaintiff from afterwards setting up his title and recovering of the defendant for the conversion of the property.

TROVER for fifty sheep, originally commenced before a justice and brought into the county court by appeal. Plea, the general issue; trial by jury, May Term, 1855,—UNDERWOOD, J., presiding.

The plaintiff's testimony tended to prove that the sheep in question belonged to and were bailed by him to one Sylvanus Chamberlin, as whose property they were attached, by the defendant Ellsworth, upon a writ in favor of the defendant Flint, and placed in Flint's possession, from whom the plaintiff demanded them, and that Flint refused to let the plaintiff have them unless he would buy and pay for them; and that after Flint had refused to let him have them, he bought them of said Flint, and paid him $1.25 per head, protesting, nevertheless, that he was the owner of them, and that he should call on him in some other way. The plaintiff's evidence further tended to prove that the sheep were large, nice sheep, with heavy fleeces, and were worth, at the time they were attached, from $2.25 to $2.50 per head, and had been sheared by Flint, after the attachment, and before the purchase by the plaintiff.

The defendants gave evidence tending to prove that the sheep were the property of Chamberlin; and that, after the attachment, Chamberlin and Flint had them appraised, and applied in payment of said Chamberlin's debt to Flint; and that Chamberlin informed Flint that he did not know but the plaintiff would claim the sheep. The defendant's evidence further tended to show that, after the attachment, Flint sent Ellsworth to see the plaintiff, and ascertain whether he owned the sheep; and that, the plaintiff, on that occasion, told Ellsworth he had sold a colt to Chamberlin, with which he had procured the sheep in question, and disclaimed having any sheep there.

The defendant's evidence tended further to prove that, at the time the plaintiff purchased said sheep of Flint, Flint inquired of the plaintiff whether he owned the sheep, and told him that he wanted no litigation about them, and that, if the plaintiff owned them, he would deliver them up to him; and that, on that occasion, the plaintiff told Flint that he was not the owner of the sheep, and had no claim to or interest in them, and that the plaintiff then purchased the sheep, as above stated.

The plaintiff requested the court to charge the jury that though they should find that he disclaimed all ownership or interest in the

sheep, on that occasion, and declared to Flint that he had no interest in them, yet, if they should find that the sheep in fact belonged to the plaintiff, and that the title to them was in him, that he might recover for the sheep; that, in any event, if the sheep belonged to the plaintiff, and the title was in him, that he would be entitled to recover the value of the fleeces on the sheep when taken, and which had been shorn from them; being the difference in value in said sheep between the time they were attached and the time they were purchased by the plaintiff.

The court refused to charge the jury as requested, but did charge them, among other things not excepted to, that if they found, from the proof in the case, that the plaintiff, after learning that Flint had attached them as Chamberlin's and had had them applied on his debt, as the testimony tended to show, and when Flint offered to return them to the plaintiff, if he claimed to own them, that if then the plaintiff disclaimed all ownership or interest in them, and gave Flint fully to understand that he had no interest in or ownership of them, and purchased them of Flint, as the testimony tended to show, then, though they should find that the title, in fact, was in the plaintiff, yet that he would be estopped from setting up his claim, and would not be entitled to recover either for the sheep or for the fleeces. Verdict for the defendants.

To the refusal of the court to charge as requested, and to the charge, as given, the plaintiff excepted.

In the taxation of the defendants' costs, the plaintiff objected to the allowance of two travels and two attendances for the defendants before the justice, at the different trials. It was conceded that the defendant Flint did not personally attend at any of those trials. His fees for travel and attendance were allowed by the court at $7.94, to which the plaintiff excepted. The plaintiff also objected to allowing the defendants separate term fees and separate travels at each term of the county court, but the court overruled the objection, and allowed separate term fees and separate travels, each term; to which the plaintiff also excepted. The defendant put in a written plea before the justice, but no pleadings were filed in the county court, the plea, at the commencement of the trial, being stated to be the general issue.

35

*W. C. French* and *Washburn & Marsh* for the plaintiff.

*A. P. Hunton* for the defendants.

The opinion of the court was delivered by

REDFIELD, CH. J. I. The decision in regard to costs seems to us correct. Each defendant, in actions of tort, has been treated as a distinct party in the suit, until by joining in a plea in bar, with others, or in some other way, he so identified his interests with others, that the success of the defense, as to each one, depended upon its success, as to all. This will entitle them to tax separate travel and attendance, before the justice, and separate travel and term fees, in the county court. The attorney fee is given, on account of the trial, and no more attorney fees are taxable upon the same side than there are distinct trials in the action. The general issue, in actions of tort, is regarded as several, although in form joint. In the present case the plea before the justice was, in form, several, and, not being renewed before the county court, might still be regarded as in force, the same as a declaration. But the result is the same either way.

II. In regard to the merits of the case, we must, for the purpose of testing the correctness of the decision below, assume that the plaintiff was the owner of the sheep, at the time they were taken, as there was testimony tending to prove this. We must, also, lay out of the case what the plaintiff said to Ellsworth, as the case was made to turn upon the transaction with Flint.

It seems to us the extent and force of the transaction is to depend upon the legal understanding of what passed. Did, then, the parties understand that the plaintiff there made any abandonment of his claim, upon which the defendant was induced to change his course of action? and, if so, to what extent was the claim abandoned? Did it extend to the whole claim, or only to the sheep, and not the wool?

1. It seems to us difficult to so construe the case that it shall fairly appear, upon the defendant's testimony upon this point, (which is now all that is under consideration,) that he did not change his course of action, upon the plaintiff's assertion that he was not the owner of the sheep, and had no claim to, or interest in

them.   For the defendant seems to have made that an express condition of the sale of the sheep to the plaintiff.   Flint said he wanted no litigation about them, and, if the plaintiff owned them, he would deliver them up to him; and, the case adds, that after these mutual declarations, "that the plaintiff *then* purchased the sheep."   That must signify something more than that he purchased the sheep, at that time, immediately after this conversation.   It can signify nothing less, in the connection, than that the defendant would not sell until the question of the plaintiff's claim was quieted and settled, or abandoned, and that the sale was finally closed upon this express understanding.   This being so, the claim, however valid it may have been, was abandoned understandingly, and upon sufficient consideration; the defendant having been induced to act upon the assurances, and it cannot now be revoked.   The plaintiff is forever barred from asserting the claim which he then abandoned.

2. But a question is made whether the entire claim was really understood to be abandoned.   But it seems to us the parties must have understood the abandonment as extending to the entire claim for the sheep, as taken, with the wool upon them.   The defendant said he wanted no litigation about them, that is, the sheep, as taken, of course.   For it would be absurd to suppose that he meant only the sheep, and not the wool.   That would leave the entire litigation, as much as if the sheep were not settled for.   The declaration, too, that if the plaintiff owned them he would deliver them up to him, must, to be reasonable, include both the sheep and the wool, for nothing less would quiet litigation.   The plaintiff's declaration, too, on this occasion, that "he was not the owner of the sheep, and had no claim to, or interest in them," could signify nothing less than an abandonment of all claim to the sheep, when taken, and, as taken.   And this was the condition upon which the sale was effected.   And, if binding at all, it is binding to the full extent.

For if the defendant was not entitled, as of right, to return the sheep and wool, there can be little question, on the defendant's proof, it would have been then accepted, if offered.   At all events, the party was entitled to make the attempt to buy his peace, and by reason of this abandonment of all claim, it is fair to presume, the defendant has been induced to sell the sheep to the plaintiff, and

to forego all efforts to compromise the matter in any other way, and has incurred the expense and hazard of defending this suit. This, it seems to us, renders the estoppel sufficiently binding to the fullest extent.

If we limit the binding force of the estoppel to the loss incurred in faith of it, it will cover the plaintiff's whole claim. For nothing less will place the defendant in the same situation he would have been, if the assurance had not been given by the plaintiff and acted upon by the defendant.

Judgment affirmed.